NOT FOR PUBLICATION                                    (Document No. 2)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                              :
LANCE BOBO,                                   :
                                              :
                        Plaintiff,            :        Civil No. 13-5007 (RBK/KMW)
                                              :
            v.                                :        **OPINION**
                                              :
                                              :
WILDWOOD PUBLIC SCHOOLS                        :
BOARD OF EDUCATION, et al.                     :
                                              :
                        Defendants.           :
_____                :

**KUGLER**, United States District Judge:

In this case, Plaintiff Lance Bobo ("Plaintiff") asserts a claim of disability discrimination under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. ("NJLAD"), violations of his constitutionally protected rights, actionable under 42 U.S.C. §§ 1983 and 1985, a Pierce common law wrongful discharge claim, and a claim under the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 34:19-1 et seq., against the Wildwood Public Schools Board of Education ("Defendant Board"), Patrick Quinlan, Plaintiff's "supervisor," and Gregory Rohrman and Dennis Anderson.[1]

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, Defendants' Motion will be GRANTED.

_____

[1] Plaintiff does not provide any identificatory information as to Defendant Rohrman or Defendant Anderson.

1

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Plaintiff was employed by the Board as a custodian beginning in August 2005.  (Compl. ¶ 1.)  In November of that year, Plaintiff complained to his supervisor, Defendant Quinlan, that "certain records regarding the boilers in the school were being falsified."  (Id. ¶ 2.)  Plaintiff specifically complained that he had been listed "as having trained another employee on the procedures for checking boilers when in fact he had not . . . ."  (Id.)  After Plaintiff complained, Defendant Quinlan "became upset."  (Id. ¶ 3.)  Not only did Defendant Quinlan start complaining about Plaintiff's work performance, but he also assigned Plaintiff to perform "additional tasks that his co-workers were not made to perform."  (Id.)

Plaintiff alleges that over the next few years, Defendant Quinlan "constantly harassed Plaintiff about his work, threatening his job."  (Id. ¶ 4.)  In 2010, Plaintiff complained about Defendant Quinlan's "mismanagement of funds."[3]  (Id. ¶ 5.)  He also complained that certain work was being performed by individuals who did not hold a "Black Seal license," which was required, and that Defendant Quinlan was "dumping waste illegally."[4]  (Id. ¶¶ 6-7.)  Although Plaintiff sought "whistleblower protection" from the Human Resources Department, he was "denied any protection."  (Id. ¶ 8.)

Plaintiff continued to report alleged wrongdoing during 2010.  (Id. ¶¶ 5-10.)  He contacted the "Office of Fiscal Accounting to report what he believed was mismanagement of funds."  (Id. ¶ 9.)  He also reported witnessing a co-worker act in an inappropriate manner

---

[2] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff."  Accordingly, the following facts are taken from Plaintiff's Complaint.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

[3] It is not clear to whom Plaintiff made this complaint.

[4] Id.

toward a student.[5]  (Id. ¶ 10.)  Plaintiff was told not to discuss the alleged incident involving his

co-worker[6] and was subsequently transferred to a different school where Defendant Quinlan

allegedly continued to harass him and, as of December 2010, started "issuing Disciplinary

Notices to Plaintiff for allegedly not completing tasks required of him."  (Id. ¶¶ 10-12.)

Plaintiff alleges that due to his mistreatment, he suffered emotional distress and elevated

blood pressure, which led to a "sudden change in Plaintiff's physical appearance."  (Id. ¶ 13.)

Meanwhile, Defendant Quinlan allegedly "bragged to other workers that he had elevated

Plaintiff's blood pressure and made him turn red in the face."  (Id. ¶ 14.)

In December 2011, Plaintiff left work after the school nurse confirmed that his blood

pressure was highly elevated.  (Id. ¶ 15.)  Plaintiff sought medical treatment and was out of work

for five days.  (Id.)  That same month, Plaintiff advised "Defendants[7] that he was unable to report

to work due to 'stress induced headaches.'"  (Id. ¶ 16.)  In response, Defendant Rohrman sent

Plaintiff a notice dated December 9, 2011, advising Plaintiff that he was "suspended with pay [ ]

pending the results of a fitness for duty evaluation"; Plaintiff was then directed to undergo a

psychiatric evaluation.  (Id. ¶¶ 17-18.)

Upon Plaintiff's return to work, Defendant Quinlan allegedly continued to harass Plaintiff

and issue him "bogus" disciplinary actions.  (Id. ¶ 19.)  On February 21, 2012, "Defendant[8]

notified Plaintiff [by letter] that he was terminated effective in thirty (30) days."  (Id. ¶ 20.)

---

[5] Id.

[6] Plaintiff does not allege who instructed him to refrain from speaking about this incident.

[7] Plaintiff does not identify any one individual.  Indeed, Plaintiff often refers to Defendants collectively throughout his Complaint without breaking down who did what, and when.

[8] Plaintiff does not allege whether he received his termination notice from Defendant Board or one of the other defendants.

On February 20, 2013, Plaintiff filed an action against the Defendants in the Superior Court of New Jersey, Law Division, Cape May County, Docket No. CPM-L-87-13.  (Doc. No. 1.)  On August 21, 2013, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441(a) and (b), invoking this Court's jurisdiction under 28 U.S.C. § 1331.  (Id.)  On September 20, 2013, Defendants filed their Motion to Dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 2.)  As this motion has been briefed, the Court now turns to the parties' arguments.

## II.    LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  Also, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 131 (quoting Iqbal, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id. (quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

## III.    DISCUSSION

### A.    Plaintiff's CEPA Claim

In relevant part, CEPA prohibits an employer from "[r]etaliatory action" against an employee who "[o]bjects to, or refuses to participate in any activity, policy, or practice which the employee reasonable believes:  (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . (2) is fraudulent or criminal . . . or (3) is incompatible with a clear mandate of public policy . . . ."  N.J. Stat. Ann. § 34:19-3c(1)-(3).[9]

---

[9] CEPA explicitly applies liability to "employers" which is defined as:

> any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof.

N.J. Stat. Ann. § 34:19-2(a).  This Court has previously held that defendants can be held individually liable under CEPA if they are a "person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent."  Palladino v. VNA of S. N.J., Inc., 68 F. Supp. 2d 455, 474 (D.N.J. 1999);

To state a prima facie case under CEPA, a plaintiff must allege that:  (1) he objected to, or refused to participate in an activity, policy or practice which he reasonably believed violated either a law, rule, regulation, was fraudulent or criminal or violated a public policy; (2) he performed a "whistle-blowing" activity as described in N.J. Stat. Ann. § 34:19-3c; (3) an adverse employment action was taken against him; and (4) a causal connection existed between his whistle-blowing activity and the adverse employment action.  Dzwonar v. McDevitt, 828 A.2d 893, 901 (N.J. 2003).  Further, when bringing an action under subsection c, a plaintiff "must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct."  Id.  The recognized sources of public policy within the ambit of subsection c(3) "include state laws, rules and regulations."  Turner v. Associated Humane Societies, Inc., 935 A.2d 825, 832 (N.J. Super. Ct. App. Div. 2007) (citations omitted).  "Therefore, a plaintiff who pursues a CEPA claim under subsection c(3) may rely upon the same laws, rules and regulations that may be the subject of a claim under subsection c(1)."  Id. (internal quotation marks, alterations, and citations omitted).[10]

_____

see also Espinosa v. Continental Airlines, 80 F. Supp. 2d 297, 306 (D.N.J. 2000).  "Supervisors are such individuals who act on behalf of the employer with the employer's consent, and are defined by CEPA as:

> any individual with an employer's organization who has the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains, or who has been designated by the employer on the notice required under section 7 of this act.

Bowen v. Parking Auth. of City of Camden, No. 00-5765, 2003 WL 22145814, at *22 (D.N.J. Sept. 18, 2003) (citing N.J. Stat. Ann. § 34:19-2(d)).  Here, although Plaintiff seeks to hold Defendants Rohrman, and Anderson liable under CEPA, he has not pled that they qualify as supervisors under the Act, nor has he set forth any allegations that make it more plausible than not that they constitute "person[s] or [a] group of persons acting directly or indirectly on behalf of or in the interest of [the Board] with the [Board's] consent."  Palladino supra.  As for Defendant Quinlan, although Plaintiff alleges that Defendant Quinlan was his supervisor, and assigned him certain tasks while issuing him Disciplinary Notices for allegedly not completing those tasks, (Compl. ¶¶ 2, 3, 12), he does not allege that Defendant Quinlan acted on behalf of Defendant Board or with the Board's consent.  Accordingly, Plaintiff's CEPA claim will be dismissed as to Defendants Rohrman, Quinlan, and Anderson.

[10] Based on Plaintiff's allegation that Defendants violated CEPA by "retaliating against the Plaintiff for reporting conduct which he reasonably believed were criminal and/or incompatible with a clear mandate of public policy concerning the public health, safety, welfare or protection of the environment," the Court construes Plaintiff's CEPA

CEPA is remedial legislation, intended to "encourage employees to speak up about unsafe working conditions that violate the law or public policy . . . ." Donelson v. DuPont Chambers Works, 20 A.3d 384, 391 (N.J. 2011); see also Barratt v. Cushman & Wakefield of N.J., Inc., 675 A.2d 1094, 1098 (N.J. 1996).  As such, CEPA should be construed liberally to achieve its goal.  Dzwonar, 828 A.2d at 900.

Plaintiff alleges that he reported practices that "were criminal and/or incompatible with a clear mandate of public policy concerning the public health, safety, welfare or protection of the environment."  (Compl. Count Three ¶ 3.)  This conduct includes:  falsifying records regarding the boilers in the school by indicating that Plaintiff trained another employee on the procedures for checking the boilers when, in fact, he did not; the mismanagement of funds; the performance of work by individuals who did not hold Black Seal licenses; the illegal dumping of waste; and inappropriate conduct toward a student.  (Compl. ¶¶ 6, 5, 9, 10.)

The majority of Plaintiff's allegations are incredibly generalized.  However, viewing the Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff adequately pled sufficient facts such that the Court was able to identify "clear mandates of public policy" that Plaintiff reasonably believed was being violated by certain conduct.  See Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1012, 1015 (N.J. 1998) (noting that "the determination whether the plaintiff adequately has established the existence of a clear mandate of public policy is an issue of law" and stating that individual need not have "[s]pecific knowledge of the precise source of

_____

claim as falling under subsections c(2) and c(3).  Even if the Court walked through an analysis of each CEPA subsection, however, the Court's application of subsection c, rather than subsections a and b, would still be proper. Simply, because Plaintiff only alleges misconduct by Defendant Quinlan, his supervisor, and not his employer, subsections a and b are inapplicable.  See Smith v. TA Operating LLC, No. 10-2563, 2010 WL 3269980, at *4 (D.N.J. Aug. 17, 2010) (citing Higgins v. Pasack Valley Hosp., 730 A.2d 327, 335 (N.J. 1999) (stating that "the New Jersey Supreme Court found that employees who object to or report the misconduct of a co-worker do not come within the purview of subsections (a) and (b) which limit CEPA's application to policies, practices and activities "of" or "by" the employer")).

public policy"). For example, Plaintiff complained about the falsification of training records regarding boilers in the school as well as the illegal dumping of waste. The Court finds that these allegations implicate public safety and health concerns addressed by federal and statute statutes. See, e.g., the Occupational Health and Safety Act of 1970, 29 U.S.C. §§ 651 et seq., the New Jersey Worker Health and Safety Act, N.J. Stat. Ann. §§ 34:6A-1 et seq., and the New Jersey Public Employees' Occupational Safety and Health Act, N.J. Stat. Ann. §§ 34:6A-25 et seq.

Additionally, Plaintiff's allegation concerning the illegal dumping of waste may also implicate state criminal statutes per subsection c(2) of CEPA.[11] And, his complaint that certain employees were performing work without the requisite Black Seal license implicates New Jersey's statutory and regulatory scheme regarding individuals working with boilers. See N.J. Stat. Ann. §§ 34:7-1 et seq.; N.J. Admin. Code §§ 12:90 et seq.[12]

The Court finds that Plaintiff sufficiently alleged the first two elements of a CEPA claim—i.e., that he objected to a practice that he reasonably believed violated a public policy, and performed a whistle-blowing activity by reporting this conduct. The Court also finds that Plaintiff sufficiently alleged the third element of a CEPA claim by alleging that he was

---

[11] The Court does note, however, that Plaintiff's allegations concerning "inappropriate conduct toward a student" and Defendant Quinlan's mismanagement of funds, are far too vague for the Court to determine the applicable criminal law or clear mandate of public policy. For example, this "inappropriate conduct" could be benign as far as the law is concerned, e.g., the co-worker yelled at a student for rough-housing, or it could be far more sinister. The Court declines to step into Plaintiff's shoes and conjure up the necessary factual allegations in order to sustain a claim premised on this conduct. As for Defendant Quinlan's alleged mismanagement of funds, the Court is unable to determine, without greater specificity, whether this conduct rises to the level of fraudulent or criminal activity, or whether it implicates a clear mandate of public policy. Accordingly, the Court will not inquire into these specific complaints any further.

[12] N.J. Admin. Code § 12:90-3.3 (stating that "[a]ny person operating . . . [a]ny steam boiler, steam generator, hot water boiler for service over 250 degrees Fahrenheit" "shall have the appropriate license as specified in [§§] 12:90-3.4 through 3.8."); id. § 12:90-8.3 (stating that a "black seal" license "shall identify a boiler operator"); id. § 12:90-8.4 (setting forth the requirements necessary to be eligible for "a boiler operator's black seal license").

8

suspended and subsequently terminated from his employment.  See N.J. Stat. Ann. § 34:19-2(e) (adverse employment action includes "suspension" and "termination"); (Compl. ¶¶ 17, 20). Thus, the Court will turn to the fourth CEPA element:  whether Plaintiff has alleged a causal connection between the whistle-blowing activity and the adverse employment action.

In evaluating whether a causal connection exists, "courts look to correlative federal law to supply the relevant standards for evaluating" a retaliatory discharge claim under New Jersey law.  Morris v. Siemens Components, Inc., 928 F. Supp. 486, 493 (D.N.J. 1996) (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1212 (3d Cir.1995)).  "Federal courts have held that in order to establish causation, a plaintiff usually must allege either '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing . . . ."  Davis v. Supervalu, Inc., No. 13-414, 2013 WL 1704295, at *5 (D.N.J. Apr. 19, 2013) (stating that although the court was presented with the plaintiff's common law wrongful discharge claim on a motion to dismiss, and thus the parties had not yet had "the opportunity to conduct discovery or establish a record," plaintiff was still required to allege some factual basis to support her claim that she was discharged in violation of public policy because she filed a workers' compensation claim) (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 297 (3d Cir. 2007)); see also Calabria v. State Operated Sch. Dist. for City of Paterson, No. 06-6256, 2008 WL 3925174, at *6 (D.N.J. Aug. 26, 2008) (in evaluating the causation prong of CEPA, noting that "[t]he Third Circuit has focused on the timing of the retaliatory action and any evidence of ongoing antagonism").

Here, Plaintiff alleges that in 2005, after he complained to Defendant Quinlan about falsification of boiler records, and "in the years following," Defendant Quinlan constantly harassed Plaintiff about his work.  (Compl. ¶¶ 2-4.)  When Plaintiff made another complaint in

9

2010, he also suffered harassment by Defendant Quinlan.  (<u>Id.</u> ¶¶ 5, 11, 12.)  Then in 2011,

Plaintiff left work for a number of days due to medical issues and in December of that year

"advised Defendants that he was unable to report to work due to 'stress induced headaches.'"

(<u>Id.</u> ¶¶ 15, 16.)  In response, Defendant Rohrman "forwarded a notice dated December 9, 2011,

advising Plaintiff that he was 'suspended with pay . . . pending the results of a fitness for duty

evaluation.'"  (<u>Id.</u> ¶¶ 16-17.)  Plaintiff then stated that he eventually returned to work, but was

notified by letter dated February 21, 2012, "that he was terminated effective in thirty (30) days."

(<u>Id.</u> ¶¶ 19-20.)

      Although Plaintiff pled that he was subjected to two adverse employment actions, he

failed to connect these actions to his whistleblowing activity, which he had concluded by

December 2010, one year prior to the first adverse employment action, his December 2011

suspension.  (Compl. ¶ 10.)  Although Plaintiff makes general allegations that he was subjected

to harassment by Defendant Quinlan, the absence of suggestive temporal proximity between

Plaintiff's whistleblowing activity and his suspension and termination, and the absence of a

pattern of antagonism coupled with timing, fails to establish the requisite causal link required to

state a prima facie case under CEPA.  <u>Cf.</u> <u>Marracco v. Kuder</u>, No. 08-713, 2008 WL 4192064, at

*7 & n.6 (D.N.J. Sept. 9, 2008) (noting that Defendants did not contest that Plaintiff had met

element fourth of her CEPA claim where she alleged "that the adverse employment occurred a

few days after she voiced her objection to defendant"); <u>O'Keefe v. State, Dept. of Labor</u>, 2007

WL 1975603, at *11 (N.J. Super. Ct. App. Div. July 10, 2007) (finding that demotion of plaintiff

a mere twenty-one days after plaintiff reported discriminatory comments supported inference of

a causal connection).

      Accordingly, this claim will be dismissed.

B.      Plaintiff's Pierce Claim[13]

Plaintiff alleges that Defendants unlawfully retaliated against him for lodging various

work-related complaints in violation of Pierce v. Ortho Pharmaceutical Corp., 417 A.2d 505

(N.J. 1980).  As an initial matter, because a plaintiff is only able to maintain a Pierce cause of

action against his or her employer and not against individual employees, the Court will dismiss

this claim as to Defendants Quinlan, Rohrman, and Anderson.  See O'Lone v. New Jersey Dep't

of Corr., 712 A.2d 1177, 1180 (N.J. Super. Ct. App. Div. 1998).

As to Plaintiff's claim against Defendant Board, a Pierce common law wrongful

discharge claim allows an at-will employee to sue under a wrongful termination claim when his

or her discharge was contrary to a clear mandate of public policy.  To establish a case for

common law wrongful discharge, the employee must identify the clear mandate of public policy

and that the discharge itself was in violation of that public policy.  Tartaglia v. UBS

PaineWebber Inc., 961 A.2d 1167, 1183 (N.J. 2008); MacDougall v. Weichert, 677 A.2d 162,

167 (N.J. 1996).

As to the first requirement, that the employee must identify the clear mandate of public

policy, the Court's analysis is similar to that of the first prong of a CEPA claim.  See Mehlman v.

Mobil Oil Corp., 153 N.J. 163, 707 A.2d 1000, 1012 (N.J. 1998).  Public policy sources can

include "legislation[,] administrative rules, regulations or decisions[,] . . . judicial decisions[,

---

[13] Although the parties have not raised this issue, the Court notes that CEPA includes a waiver provision which
provides that a plaintiff cannot recover for allegedly retaliatory termination under both CEPA and the common law.
See N.J. Stat. Ann. § 34:19-8.  This Court and other district courts have held, however, that a plaintiff does not
waive his common law claim by filing a CEPA claim because the decision between a CEPA and common law
course of action is to be made after the completion of discovery.  See Brangan v. Ball Plastic Container Corp., No.
11-5470, 2012 WL 1332663, at *6 (D.N.J. Apr. 17, 2012) (stating that "though Plaintiff cannot ultimately proceed
under both claims, Plaintiff does not have to make that election at this point in the proceedings"); Broad v. Home
Depot U.S.A., Inc., No. 14-771, 2014 WL 1607375, at *3 (D.N.J. Apr. 22, 2014) ("the CEPA waiver does not attach
until after the completion of discovery").  Accordingly, the Court's consideration of Plaintiff's Pierce claim is
proper.

and] [i]n certain instances, a professional code of ethics." <u>Pierce</u>, 417 A.2d at 512.  Absent

legislation, the courts are to define the cause of action in "case-by-case determinations."  <u>Id.</u>

As discussed in Part III.A. <u>supra</u>, Plaintiff has set forth sufficient allegations for this

Court to determine that several clear mandates of public policy are at issue.  Thus, Plaintiff has

satisfied the first <u>Pierce</u> requirement.

The second <u>Pierce</u> requirement, that Plaintiff's discharge was in violation of the public

policy at issue, requires "an expression by the employee of a disagreement with a corporate

policy, directive, or decision based on a clear mandate of public policy derived from one of the

[public policy] sources . . . identified in <u>Pierce</u>."  <u>Tartaglia</u>, 921 A.2d at 1183.  Also required is a

"sufficient expression" of that disagreement "to support the conclusion that the resulting

discharge violates the mandate of public policy and is wrongful."  <u>Id.</u>  An actual or threatened

complaint to an external agency or body is not required, though it would "ordinarily be sufficient

means of expression."  <u>Id.</u>  A direct complaint to senior corporate management would also most

likely suffice.  <u>Id.</u>  On the other hand, a "passing remark to co-workers" will not, nor will a

complaint to an immediate supervisor.  <u>Id.</u> at 1182-3.

With regard to New Jersey's licensing requirements for boiler operators, Plaintiff fails to

identify any individual or entity to whom he made his complaint concerning his co-workers'

unlicensed status.  Accordingly, the Court is unable to ascertain whether Plaintiff's complaint

constituted a "sufficient expression" of his disagreement such that he adequately alleged a

wrongful discharge claim under <u>Pierce</u> with regard to this complaint.

As to Plaintiff's other complaints, they also fail to meet the second <u>Pierce</u> requirement.

First, although Plaintiff states that he complained to Defendant Quinlan about the falsification of

records regarding boilers in the school, a complaint to an immediate supervisor is not enough to

qualify as a "sufficient expression" of disagreement and Plaintiff sets forth no allegations tending to show that Defendant Quinlan qualified as "senior corporate management."  See Tartaglia, 921 A.2d at 1182-83.  Further, Plaintiff states that he also made complaints concerning certain work being performed by unlicensed employees and Defendant Quinlan's illegal dumping of waste; however, it is not apparent from the face of the Complaint to whom Plaintiff made these complaints.[14]  Further, his vague assertion that he sought "whistleblower protection from the Human Resource Department" does not make it more plausible than not that he informed this Department as to each and every one of his complaints.  Regardless, as the Complaint is devoid of any information as to the Human Resources Department's standing in the Board of Education's hierarchy, or whether this entity is even a part of the Board of Education, the Court is unable to determine whether it is akin to "senior corporate management," Tartaglia, 961 A.2d at 1183, such that Plaintiff alleged the "sufficient expression" of disagreement necessary to state a common law claim for wrongful discharge.  Id.

Accordingly, Defendants' Motion to Dismiss will be granted as to this count.

**C.    Plaintiff's NJLAD Claim**

Plaintiff alleges that the Board, as well as the individual Defendants, violated the NJLAD.  The Court will first consider Plaintiff's claim as against Defendant Board.

1.    Plaintiff's claim against the Board

The NJLAD prohibits an employer from discriminating in the "terms, conditions, or privileges of employment" on the basis of a person's disability, N.J. Stat. Ann. § 10:5-12(a),

---

[14] Although Plaintiff allegedly reported Defendant Quinlan's mismanagement of funds to the "Office of Fiscal Accounting," the Court already found this complaint lacking in terms of establishing a clear mandate of public policy.  See note 11 supra.  Regardless, as discussed above in connection with the Human Resources Department, the Complaint is devoid of any information as to this entity's standing in the Board of Education's hierarchy, or whether this entity is even part of the Board of Education, such that the Court could conclude that it is akin to "senior corporate management."  See Tartaglia, 961 A.2d at 1183.

"unless the handicap precludes the performance of employment," Failla v. City of Passaic, 146 F.3d 149, 153 (3d Cir.1998) (citing N.J. Stat. Ann. § 10:5-4.1).  To state a prima facie cause of action for disability discrimination under the NJLAD, the employee must allege (1) that he was handicapped, (2) that he was otherwise qualified to perform the essential functions of the job, with or without the accommodation by the employer, and was performing at a level that met the employer's expectations, (3) that he nevertheless was fired, and (4) that the employer sought someone to perform the same work after he left.  Dicino v. Aetna U.S. Healthcare, No. 01-3206, 2003 WL 21501818, at *12 (D.N.J. June 23, 2003) (citing Muller v. Exxon Research & Eng'g Co., 786 A.2d 143, 147-48 (N.J. Super Ct. App. Div. 2001)).

Here, Defendants argue that although Plaintiff contends that he is entitled to protection as a disabled person on the basis of his hypertension, he "has not alleged that his hypertension was the source of discrimination, or somehow did not allow him to perform his job duties."  (Defs.' Br. 32.)  Further, Plaintiff has failed to plead a NJLAD cause of action because he "has not alleged that the Defendant discharged [him] on the basis of this condition, subjected [him] to a hostile work environment, or failed to accommodate [his] disability," he merely pled that he was treated differently than other custodians based on his disability.  (Id.)

Plaintiff responds that his Complaint establishes that he was diagnosed with hypertension which required him to take a medical leave of absence.  He then argues that his disability and his request for a leave of absence led defendants to retaliate against him by requiring him to take a psychiatric fitness for duty examination, which other employees were not required to do, and that he was subsequently terminated because of his perceived disability and for taking medical leave of absence for this condition.  Plaintiff admits, however, that "although [the facts are] not detailed in the Complaint," they are "contained within the Complaint."  (Pl.'s Opp'n Br. 16-17.)

14

Though the Court must take Plaintiff's facts as true for purposes of a motion to dismiss and make inferences in his favor, the Court is not required to read facts into Plaintiff's Complaint that simply do not exist and are necessary for purposes of stating a claim under the NJLAD. Plaintiff still bears the burden of stating his claim in a way that makes it more plausible than not that he was discriminated against on account of his alleged disability.  Because Plaintiff has failed to allege that although he was disabled, he was otherwise qualified to perform the essential functions of his job, with or without the accommodation by his employer, that he was performing at a level that met his employer's expectations, and that his employer sought someone to perform the same work after he left, he has failed to allege all the elements necessary to state a claim for disability discrimination under the NJLAD.  See Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 805 (N.J. 1988).  Accordingly, Plaintiff's NJLAD claim against the Board will be dismissed.

       2.  Plaintiff's claim against Defendants Rohrman, Anderson, and Quinlan

Because the NJLAD "imposes liability only on 'employers' and not on individual employees . . . the only way for an employee to be found individually liable under the NJLAD is if he is involved in aiding or abetting an employer's discriminatory conduct . . . .  Accordingly, while an employee cannot be held individually liable on his own, '[e]mployers and individual supervisors can be held liable under the [NJLAD] for aiding and abetting another's [ ] discriminatory conduct.'"  Horvath v. Rimtec Corp., 102 F. Supp. 2d 219, 228 (D.N.J. 2000) (citing Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999)).

Plaintiff must establish three elements for an aiding and abetting claim under the NJLAD: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at

the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." Hurley, 174 F.3d at 127 (citations omitted).

Here, because Plaintiff has not pled any facts that show Defendant Anderson took any action toward the Plaintiff, this claim will be dismissed as to him.  Further, as Plaintiff has failed to set forth any allegations in his Complaint that make it more plausible than not that Defendants Rohrman and Quinlan could be held liable under the NJLAD for aiding and abetting Defendant Board's conduct—indeed, the terms "aiding," "abetting," and "conspiracy," are notably absent from Plaintiff's Complaint—the Court will also dismiss Plaintiff's NJLAD claim as to them.

**D.    Plaintiff's Claims Under 42 U.S.C. §§ 1983 and 1985**

Finally, Plaintiff alleges that Defendants deprived him of his constitutionally protected rights while acting under color of state law, and thus violated 42 U.S.C. §§1983 and 1985.

As an initial matter, section 1985 claims are predicated on the existence of a conspiracy. See United Broth. Of Carpenters and Joiners v. Scott, 463 U.S. 825, 828-29 (1983) ("to make out a violation of § 1985(3), the plaintiff must allege and prove four elements," which include "a conspiracy"); Heffernan v. Hunter, 189 F.3d 405, 411 (3d Cir. 1999) ("section 1985(1) and 1985(2) claims require a conspiracy").  Because Plaintiff has failed to allege that Defendants were involved in any conspiracy, the Court will dismiss this claim.

Moving on to Plaintiff's section 1983 claim, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

16

Thus, to establish a violation of section 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law, and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  As Plaintiff claims that all of the Defendants violated his constitutional rights, the Court will address his claim against the Board and the individual Defendants separately.

       1.   Plaintiff's section 1983 claim against Defendant Board

In contrast to the concept of individual liability, a local government entity, including a school board, may be held liable under section 1983 for a constitutional violation if the violation occurred as a result of a policy or custom established or approved by that entity.  C.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978)).  The policy or custom must also have been the proximate cause of the constitutional violation.  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).  "If the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences . . . .  A showing of simple or even heightened negligence will not suffice."  Chambers v. Sch. Dist. of Philadelphia, 587 F.3d 176, 193 (3d Cir. 2009).

In the context of municipal liability under section 1983, a policy is an "official proclamation, policy, or edict" made by "a decisionmaker with final authority" to do so.  Beck, 89 F.3d at 971 (internal quotations and citations omitted).  In contrast, a custom is "a course of conduct . . . though not authorized by law . . . [that] is so permanent and well-settled as to virtually constitute law."  Id.  A custom "may also be established by evidence of knowledge and acquiescence."  Id.

The Third Circuit has held that there are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

As with a policymaker's failure to act under circumstances that exhibit a deliberate indifference to constitutional rights, municipal entities may be similarly liable under section 1983 if they fail to train their employees or personnel, and such failure exhibits a "deliberate indifference to the rights of persons" with whom they come into contact.  Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing City of Canton v. Harris, 489 U.S. 378 (1989)).  "[M]unicipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations."  Bd. of Cnty. Comm'rs of Bryan Cnty v. Brown, 520 U.S. 397, 407 (1997) (quotation omitted). "In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . . is the moving force behind the plaintiff's injury." Id. at 407-08.

Here, Plaintiff has not identified any policy or custom that caused his injuries, nor has he set forth any allegations that would support a 1983 claim premised on a failure to train.

However, even if he had, he has failed to identify which of his rights, privileges, or immunities secured by the Constitution are at issue.  Accordingly, his section 1983 claim against Defendant Board will be dismissed.

### 2.   Plaintiff's section 1983 claim against the Individual Defendants

Plaintiff also seeks to hold Defendants Rohrman, Quinlan, and Anderson liable under section 1983.  To do so, Plaintiff must show that these individual had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence."  Id. (citations omitted).

Because Plaintiff has not pled any facts showing that Defendant Anderson took any action whatsoever, the section 1983 claim will be dismissed as to him.

As to Defendants Rohrman and Quinlan, Plaintiff alleges that Defendant Rohrman required Plaintiff to undergo a "fitness for duty evaluation," and then directed him to undergo a psychiatric evaluation.  (Compl. ¶¶ 17-18.)  Meanwhile, Defendant Quinlan retaliated against Plaintiff for his 2005 complaint concerning boiler records and then, in the years following, continued to harass Plaintiff about his work by, e.g., issuing him "bogus disciplinary actions." (Id. ¶¶ 12, 19.)  However, Plaintiff has failed to allege how either Defendant's actions deprived him of rights, privileges, or immunities secured by the Constitution.  Indeed, as with his claim against Defendant Board, he again fails to identify which of his rights, privileges, or immunities secured by the Constitution have been violated.  Consequently, Plaintiff's section 1983 claim against Defendants Rohrman and Quinlan will be dismissed.

### E.  Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  Indeed, even when "a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Because the Court finds that Plaintiff may be able to cure the pleading deficiencies identified above such that amendment would not be futile, the Court will grant his request and order that should Plaintiff seek to amend his Complaint he do so within fourteen days of the date of this Opinion and accompanying Order.  Cf. Hartman v. Twp. of Readington, No. 02-2017, 2006 WL 3485995, at *3 (D.N.J. Nov. 30, 2006) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile").

### IV.   CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion to Dismiss.  An appropriate order shall issue today.


Dated: 5/28/2014                                         s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge